The next case this morning is 523-1077, Heeple v. Henslick. Arguing for the appellant is William Wolfe. Arguing for the appellee is Jamie Bella. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning, your honor. Can your honors hear me? Yes. May it please the court, good morning. My name is William Wolfe and I represent the appellant, Michael Henslick, and I'm glad I can be heard. Your honors, what this case is about to us is an issue of ineffective assistance of counsel based on essentially what I would say is a fair characterization of an abandonment of any meaningful investigation of this matter. The evidence against Mr. Henslick, it was a lengthy murder trial. It's recounted well within not just the record, but the fourth district before the boundaries changed, appellate opinion affirming his conviction and sentence. And the evidence basically came down to three things, fairly complicated things, but three things. First, the state's evidence came down to DNA based on the defendant's blood as well as semen being found at the scene. It came down to an inculpatory statement. I'm sorry, sir. Did you have a question, Justice McHaney? Okay, no. And it came down to an alleged wound on the defendant's side. It was either his hand or his wrist essentially that the prosecutors used. There was no other witnesses or evidence against Mr. Henslick at all. There was no eyewitnesses. This is a case that was essentially what I would fairly characterize as a cold case for nine years before the government claimed that they had a breakthrough that brought them to the attention of Mr. Henslick. Faced with this, defense counsel made a choice to essentially limit the amount of information that she was willing to accept from her client. And from the very beginning adopted a, we are going to just go in front of the jury and say that there was a reasonable doubt here, where there was no meaningful adversarial testing of the DNA evidence that she was contesting apparently, as well as no meaningful explication as to why Mr. Henslick would make inculpatory statements if they were not true. And I would argue that this lack of investigation as far as adopting essentially a policy, an internal defense attorney policy, that I'm not going to hear from my client other than maybe in hypothetical terms, not because of anything Mr. Henslick did, not because of anything Mr. Henslick said, but because past clients of hers attempted to essentially perjure themselves in trial. So this is a policy that she's adopting forward that I would argue constitutionally compromised any due process, any meaningful adversarial testing of the state's evidence, and compromised his choice as to whether or not to testify. The reason why I'm saying that to the court, she made a commitment in opening statements that this was a reasonable doubt case. She made a commitment in cross-examination of the DNA evidence to essentially present the argument that they can't prove that this is Mr. Henslick's DNA without any meaningful fact, other than just asking just general questions about the DNA statistical database. And just arguing that the confession was coerced, but without really any evidence. The only way to explain this and present any meaningful defense was for Mr. Henslick to explain what happened, which he did at post-trial motions and sentencing. And he did at the third stage later on at the third stage hearing that he was there, that he had consensual sex with the woman, Ms. Cassano, that was sadly, tragically murdered as he testified to. And he said at post-trial motions and sentencing years before by someone else. And the fact of the matter is that a defense attorney would choose to say, I don't want to hear your side of the story, except maybe in some hypothetical terms. Foreclosed any meaningful investigation as far as everything from the blood spatter evidence to all of the crime scene evidence in this case, leaving essentially a jury with overwhelming evidence with no choice other than just to convict. And I would argue based on both U.S. and Illinois Supreme Court case law that this was an inadequate investigation as a matter of law. And under a Strickland analysis that the Mr. Henslick was subjected to extreme professional errors by not asking the client certain fundamental questions, not being open in the slightest to anything other than I'm going to present a reasonable doubt case. It's if you imagine trying to defend any case, let's say a rape case where there is DNA evidence and the client wants to tell the lawyer his story of consensual sex. But I, the defense lawyer, don't want to hear it. I don't want to hear anything other than maybe in hypothetical terms. And I'm just going to present a reasonable doubt defense, which in the light of depending on the statistical odds, but certainly the statistical odds that are in this record regarding both the semen and the blood evidence, it foreclosed anything but a guilty verdict. Ms. Lepp, the trial attorney, made no attempt to learn whether or not the blood spatter evidence would corroborate her client's story or be refuted before making a judgment call, made no effort to really do any meaningful expert assistance at all. And I would argue that this exceptionally compromised his case so that this was an unprofessional judgment as a matter of law per Sears and per the Illinois Supreme Court decision. And I'm not sure if I'm pronouncing it correctly. That's cited in the opening brief, and this was severely prejudicial. I would argue to this court that the trial court, when he made his conclusions of law, applied incorrect standards that should be reviewed and be outright reversed and remanded for a new trial by this court. He seemed to say, as far as the first prong of Strickland, that defense attorney made no improper errors. And I would argue that failure to, among other things, she admitted, Ms. Lepp admitted that is, the trial attorney, she was, is that she never went over all of the interrogation with her client. And while she went over parts, it might be relevant to a motion to suppress as far as the issues of coercion or the issues of whether or not the Miranda waiver is knowing and intelligent. Fundamentally, in front of a jury, the issues become, is this statement true? And if not, why not? The appellate court, the second district in People v. Juan Rivera laid out in great detail that's cited in our brief as far as why innocent people might confess. And there are, have been a number of exonerations detailed by the, among others, the Innocence Project of New York, as far as exonerations where the defendant originally made an inculpatory statement. I would argue to this court that at this point in time, that the court erred as far as the trial court erred. The post-conviction third stage hearing court erred, just to make myself clear, in finding that there were no unprofessional judgments. And he did not apply the correct standard as far as prejudice, as far as he basically substituted what he thought a jury might think for whether or not there's a substantial probability, given that there is a defense put forward, that a jury verdict might be different compared to essentially no defense at all. This was sort of like shooting fish in a barrel. And with that, unless there are questions, I would ask to reserve my time. Justice Schiller, any questions? Not at this time. Justice Vaughn? No questions. You will be granted rebuttal. Appellee, you may proceed. Good morning, Your Honors. Counsel, may it please the court. My name is Jamie Bella, and I'm on behalf of the people of the state of Illinois. The state respectfully requests that this court affirm the denial of the defendant's post-conviction claim of ineffective assistance of counsel, as the claim is unfounded under both prongs of the Strickland analysis. Briefly, the state would like to address the defendant's claim that de novo review is appropriate, the appropriate standard for this case. The Illinois Supreme Court has repeatedly held that the manifest error standard applies to the review of a denial of post-conviction relief following a third-stage evidentiary hearing involving fact-finding and credibility determinations. In cases where no fact-finding or credibility determinations are necessary and the issue presents only a question of law, then the reviewing court applies the de novo standard. In this case, the manifest error standard is proper because the trial court did weigh evidence as a finder of fact and made credibility determinations. Turning to the issue in this case, the state submits that the trial court's denial of the defendant's post-conviction petition or claim of ineffective assistance of counsel was not manifestly erroneous. In a third-stage evidentiary hearing, the burden is on the defendant to make a substantial showing of a constitutional violation. To meet the standard with respect to a claim of ineffective assistance of counsel, the defendant must show that his trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the alleged deficient performance. In his post-conviction petition in the court below, the defendant alleged that his trial counsel's performance was constitutionally deficient and that she failed to learn the granular details regarding the defendant's account of the events that led to the death of Holly Cassano. As to prejudice, the defendant argued that counsel was operating with incomplete information when she advised him not to testify, which deprived him of any meaningful choice as to whether to do so, and foreclosed the opportunity to provide the jury with an explanation regarding why his DNA was found at the scene and why he confessed to the police that he committed the murder and had intercourse with the victim's corpse. As the defendant correctly states, the trial counsel has a duty to conduct reasonable investigations or to make a reasonable decision that makes the particular investigation unnecessary. At the hearing, counsel testified that she was fully aware of the defendant's claims regarding what took place the night of the murder, but had concerns about suborning perjury and discrepancies between the defendant's account of the events and the physical evidence that was presented by the state. Essentially, as the defense counsel pointed out, the evidence in this case consisted largely of a large amount of DNA evidence and a large amount of people tested its DNA evidence, and when the defendant's DNA was ultimately tested after close to 10 years after the murder, the match was to an astronomical degree. Counsel, faced with the defendant's version of events that he did not claim to the police, that an unnamed intruder that he was unable to identify, was the one that committed the murder and that he was injured while on scene, which explained the blood evidence that the intruder cut his arm. In the police interview, the defendant told the police that he cut himself while he was stabbing the victim and that he had sex with the corpse after the murder. The semen and the blood DNA evidence that was found on scene was linked to the defendant's DNA to an astronomical degree, but the defendant's account to counsel during the pretrial process was that he had consensual sex with the victim and then killed her afterwards, and that someone else killed her afterwards. Given the counsel's testimony at the evidentiary hearing regarding her investigation, the standard does not require her to investigate things that call into question her professional ethics, especially where there's concerns of perjury. As far as the evidence with regard to blood spatter and the DNA evidence and the contradictions with that evidence in the defendant's story, counsel made a strategic decision not to present the defendant's version of offense in light of the discrepancies. The defendant has failed to show that that was an unreasonable decision, and given that it was a matter of trial strategy, counsel's decision is entitled to a great amount of deference in that regard. Also, in an ineffective assistance of counsel claim, to meet his burden, the defendant actually testified at the hearing, and when the trial court addressed the defendant personally and questioned him regarding this intruder, the defendant even stated to the court that, when the court inquired as to whether he'd be able to identify the attacker, the defendant was unable to give any detail regarding the attacker in terms of his appearance, age, or anything that would relate to how a person, this unnamed person, would be identified. So, in order to claim that counsel had a duty to investigate this claim regarding this unnamed person, the defendant hasn't identified a single piece of evidence or information that he would have been able to provide counsel that would have enabled her to do so. As counsel noted and as the record shows, this case languished for close to 10 years before the offender was identified, and in light of the amount of over 150 individuals whose DNA was tested in the community and finding none, it's hard to explain or hard to argue that counsel was ineffective for not picking up the investigation and carrying it further to identify this individual when the police, after 10 years, were unable to do so. On a national level, comparing DNA samples on a national level. As to prejudice, the defendant's petition claimed that counsel advised him not to testify, or that deprived him of his right to testify. At the hearing, counsel explicitly testified that the decision of whether the defendant was going to testify was left open prior to trial and throughout trial until the time where he needed to make a decision as to that fact. In light of the evidence that was presented at trial, the trial court determined that the defendant's version of events was a lie, that the evidence conflicted with that testimony, and counsel explicitly stated in her testimony that if the defendant were to assert his right to testify, that she would allow him to do so in the narrative in order to avoid concerns regarding perjury and to allow him to give his version of events and not interfere with his constitutional right to testify. In light of the evidence that was presented at trial, the trial court determined that the defendant's version of events was a lie, that the evidence conflicted with that testimony, and counsel's decision not to present that evidence was the way the trial court put it. It was better to say nothing than to say the story that the defendant was repeating post-trial. In light of those facts and in light of the trial court's finding in the record, the state submits that the trial court's findings in that regard were not manifest error, and the state requests that this court affirm the trial court's denial of the defendant's post-conviction relief. Unless your counsels have any questions, I can stand on my brief with respect to any arguments that I did not repeat today. Questions, Justice Schiller? No questions. Justice Vaughn? No questions, thank you. I may present a rebuttal appellant. Thank you, Your Honor. So the first thing I'd like to address is counsel's argument regarding de novo review, and a couple of issues I need to raise, and these are raised in our reply brief. Number one is that we are conceding that Your Honors should, when looking over the trial court, post-conviction hearing court's factual findings, that that's allowed a great deal of deference. I am not trying to argue that that is subject to de novo review, and counsel is absolutely correct about that. What she is incorrect about, based on the Illinois Supreme Court case of English that's cited in our reply brief, is that the post-conviction hearing court's legal conclusions are subject to de novo review by this court. And his legal conclusions, and when we were talking about prejudice, are absolutely incorrect, because the trial court is replacing his own view over the jury's view. It reminds me of a Justice Scalia quote from a completely different context of the confrontation clause in Crawford v. Washington. And he wrote for the court when he took the reliability analysis that many statutes had and overruled it, basically said, why not just dispense with a jury trial in addition to confrontation, because the court has concluded that the defendant is obviously guilty. And that is essentially what is happening here, because the trial court used the wrong standard, and Pally, in her brief, did not address this issue. And we would argue to this court has waived it because they've never articulated, with respect to prejudice, why the correct standard, why the court, post-conviction hearing court, used the correct standard. They didn't. What is a reasonable investigation? According to the Illinois Supreme Court decision that's cited in our opening brief of People v. Hodges, if a client is telling a defense lawyer something that's fantastic, something that's delusional, all right, trial counsel can move on to other options. But absent that, and there's no discussion as to why this is fantastic, why this is delusional, why it would be improper to argue that someone else entered a residence and tragically killed someone and wounded him in the process, that needs to be fully investigated. And it wasn't. I would also argue that counsel in argument here is conflating strategy with investigation. The case law is very clear from Sears and Domagala and is binding on the trial court, that a strategic decision is only based on a proper investigation. In Sears v. Upton, that was a capital case where trial counsel, at the sentencing phase of a death case, chose to put up family members simply to say, to get on the stand essentially and beg the capital sentencing jury, please don't sentence my son to death. And never investigated his neurological issues in any way, shape, or form. In Domagala, if I'm not mixing up my cases, this was an issue of where a defendant supposedly caused a person harm, person was in the hospital, and subjected to extreme medical malpractice due to improper use of a cervical collar and a feeding tube that defense counsel never investigated. If defense counsel is essentially allowed to say, I don't need to talk to my client to make strategic choices, that turns the case law on its head. And counsel argued that Ms. Lepp was making choices because of concern that Mr. Henslick might be committing perjury. But she admitted on cross-examination, and this is in the record, it's not based on anything that Mr. Henslick said, it's not based on anything that Mr. Henslick did. She had, as I argued in my opening argument before Your Honors Now, she had previous clients in the past who had tried to perjure themselves. And so now she adopts this policy essentially with all of her clients instead of what she should be doing, is addressing everything on a case-by-case basis. Criminal defense is not a cookie cutter where there's one size that can fit all, where we can just say, all right, I'm going to just cut to the chase and argue reasonable doubt, which is what happened here. And I see that I'm out of time, absent any questions, and I'd be absolutely happy to handle any that come. Justice Schiller, any final questions? No questions, thank you. Justice Vaughn. Are you challenging the veracity or the accuracy of the blood spatter report that the state produced? I am not challenging the accuracy. What I am saying, Your Honor, is that, and this was in the record, was that Ms. Lepp admitted on cross-examination during the post-conviction hearing that she essentially, at least I would argue, knew nothing about blood spatter analysis. That she essentially, she tried to take no courses, didn't recall reviewing any literature. This is in the record. Knew nothing essentially. She didn't point to anything that she knew on the subject other than blind acceptance of the state's experts' report. And that is not an investigation. That is simply reading and learning what the state's case may reveal. Investigation is something much, much deeper, sir. Thank you. No other questions. Thank you, counsel, for your arguments. We will take this matter under advisement and issue a ruling in due course.